UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-250-GWU

JAMIE EVANS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Jamie Evans, a 22-year-old woman with a high school education plus one year of college and no past relevant work experience, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of polysubstance dependence, a bipolar disorder, and post-traumatic stress disorder. (Tr. 11). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 13-16). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and lack of work experience could perform any jobs assuming that she could have no exposure to unprotected heights or hazardous machinery, or operate any motorized equipment, could not understand, remember, or carry out any complex instructions, could not perform a job involving contact with the general public, was limited to no more than occasional changes in the work setting or work routines, and would have a moderately limited ability to perform

activities within a schedule, maintain regular attendance, and be punctual within customary employer tolerances. (Tr. 35-6). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 36).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability beginning December 15, 2006 due to fibromyalgia, bipolar disorder, manic depression, cervical cancer, bleeding in the colon, a cyst on her ovaries, endometriosis, and mood swings. (Tr. 97). At the administrative hearing she also described a problem with seizures, and stated that she had stopped driving as a result. (Tr. 22). She had a family doctor, but could not afford referrals to other physicians. (Tr. 23). The medication that had been prescribed for seizures helped, but did not completely eliminate them, and she could not afford to take as much of it as she should. (Tr. 26). The plaintiff described mood swings and paranoia due to her bipolar disorder, which caused her to stay in her house at times for months. (Tr. 27-8). She had had several inpatient hospitalizations, but claimed she could not afford outpatient mental health treatment; however, she admitted she had not followed up with the free Comprehensive Care Center as she had been advised at the hospital. (Tr. 32-3).

Although there is an extensive amount of medical evidence reflecting treatment for both physical and psychological problems, it does not appear that any treating source placed any permanent restrictions on the plaintiff.

The medical evidence reflects a number of admissions to the psychiatric unit at Corbin Baptist Hospital, during all of which drug screenings were positive for opiates and other drugs. (E.g., Tr. 427). In October, 2005, the plaintiff presented at the emergency room with feelings of depression and suicidal thoughts, and admitted that she had been injecting Oxycontin. (Tr. 631). She was put on a detoxification plan and discharged with activities "as tolerated" and a "fair" prognosis with psychiatric compliance. (Tr. 634). However, the next month she was admitted for detoxification again, stating that she was still injecting Oxycontin. (Tr. 826). Once again, she was detoxified with no complications although the counselor questioned her sincerity. (Tr. 875). There were further hospital admissions in January (Tr. 1091-2), August and September, 2007 (at which time her drug screen was positive for opiates, benzodiazepines, methadone, PCPs, and cannabis) (Tr. 1335-6), and June, 2008 (Tr. 1401-6). As the plaintiff admitted at the hearing, she did not pursue any outpatient options, and her treating sources did not suggest any permanent functional restrictions following her hospitalizations.

Jessica Huett, Psy.D., conducted a consultative psycholigical examination of the plaintiff on August 1, 2007. The plaintiff described her hospitalizations as

being due to suicidal ideation, and, although she admitted having overdosed by injecting Oxycontin, disingenuously denied current use of addictive substances. (Tr. 1216). She reported mood swings, and the psychologist noted that she was somewhat dramatic, had gaps in insight, and appeared to have a deficient coping ability. (Tr. 1217-18). She appeared to be of average to below-average intelligence and had a normal memory. Huett reviewed records indicating a history of drug abuse. (ID.). She listed an impression of a mood disorder (possibly substance-induced), polysubstance abuse, and borderline personality traits. (Tr. 1218). In terms of functional restrictions, the psychologist opined that the plaintiff would have a “moderately limited” ability to understand, remember, and carry out instructions for simple, repetitive tasks and to sustain attention and concentration, a “moderate to marked” ability to respond appropriately to supervision, coworkers, and work pressures in a work setting, and a “marked” limitation in her ability to tolerate the stress and pressure of day-to-day employment. The psychologist did not make an attempt to distinguish between restrictions caused by drug dependence and other problems.

One state agency reviewing psychologist, Dr. Jan Jacobson, opined that Huett’s actual mental evaluation did not indicate any marked mental limitations, and her opinion was given little weight as it was not consistent with the overall evidence. (Tr. 1222). The ALJ relied on the opinion of a later state agency psychological

reviewer, Dr. Ed Ross, who reviewed the evidence as of October, 2007 and noted that the plaintiff had good response to treatment after her inpatient stays. (Tr. 1383). The hypothetical question was consistent with the limitations provided by Dr. Ross. (Tr. 1381-2). Therefore, the ALJ had substantial evidence to support his choice of hypothetical factors. Moreover, even if the reviewing opinions were not entitled to significant weight, Public Law 104-121 states that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." See Bartley v. Barnhart, 117 Fed. Appx. 993 (6th Cir. 2004).

From a physical standpoint, the transcript reflects treatment for a number of problems with pelvic pain and the plaintiff's treating physician, Dr. Richard Park, provided medications for complaints of seizures, although there were apparently no objective testing results, such as from electroencephalograms. (E.g., Tr. 1358). The plaintiff underwent a consultative physical examination by Dr. Tun Nyunt in July, 2007, who found multiple areas of tenderness but no limitations of range of motion, no abnormalities of gait, and noted no difficulties with activities such as dressing and getting onto the examination table. (Tr. 1209). The ALJ relied on a state agency reviewing source, Dr. Robert K. Brown, who concluded that due to evidence of treatment for seizures the plaintiff should avoid all exposure to hazards. (Tr. 1374-80). No evidence of greater restrictions is contained in the evidence.

Therefore, the ALJ's choice of physical restrictions is also supported by substantial evidence.

The decision will be affirmed.

This the 19th day of May, 2010.

**Signed By:**

***G. Wix Unthank***

**United States Senior Judge**